## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

John T. Anderson,

        Plaintiff,

    v.

U.S. Bancorp, a Delaware
corporation; U.S. Bancorp Middle
Management Change in Control
Severance Pay Program; and U.S.
Bancorp Severance Administration
Committee,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 03-5234 ADM/JSM

_____

Clair E. Schaff, Esq., Connor, Satre & Schaff, L.L.P., Eagan, MN, on behalf of Plaintiff.

Stephen P. Lucke, Esq. and Andrew J. Holly, Esq., Dorsey &Whitney LLP, Minneapolis, MN,
on behalf of Defendants.

_____

## I. INTRODUCTION

On April 28, 2006, oral argument before the undersigned United States District Judge

was heard on Defendants U.S. Bancorp, U.S. Bancorp Middle Management Change in Control

Severance Pay Program ("the Plan"), and U.S. Bancorp Severance Administration Committee's

("the Committee") (collectively "Defendants") Motion for Summary Judgment [Docket No. 41].

In his Complaint [Docket No. 1], Plaintiff John T. Anderson ("Plaintiff" or "Anderson") asserts

claims for judicial review of benefits and breach of fiduciary duty under the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1104, 1132(a)(1)(B); and defamation.

For the reasons stated herein, Defendants' Motion is granted.

## II. BACKGROUND[1]

On February 28, 2001, U.S. Bancorp merged with Firstar Corporation.  Schaff Aff.
[Docket No. 56] Ex. A [Docket No. 55] (Compl.) ¶ 7; Def.'s Mem. [Docket No. 43] at 2.  The
merger constituted a "partial change in control," and thus implicated the U.S. Bancorp Middle
Management Change in Control Severance Pay Program ("the Plan"), an ERISA welfare benefit
plan.  Def.'s Mem. at 2; Caillier Aff. [Docket No. 46] Ex. C (App. A-6 § 1.20) at USB-A100628.
The Plan entitles eligible employees to severance benefits if they are terminated from their
employment within two years of a change in control for reasons other than "cause."  Caillier Aff.
Ex. C (App. A-6 §§ 4.1, 4.7) at USB-A100632, 635.  The Plan defines "cause" in relevant part
as:

> [G]ross and willful misconduct during the course of employment, (regardless of whether
> the misconduct occurs on the Employer's premises), including but not limited to, theft,
> assault, battery, malicious destruction of property, arson, sabotage, embezzlement,
> harassment, acts or omissions which violate the Employer's rules or policies (such as
> breaches of confidentiality), or other conduct which demonstrates a willful or reckless
> disregard of the interests of the Employer or its Affiliates . . . . Circumstances
> constituting Cause shall be determined in the sole discretion of [U.S. Bancorp].

Id. (App. A-6 § 1.7) at USB-A100620.

Anderson was employed by U.S. Bank, a subsidiary of U.S. Bancorp, from July 18, 1983
to April 30, 2002, and participated in the Plan.  Caillier Aff. Ex. A at USB-A100488; Caillier

---

[1] In this Motion for Summary Judgment, the Court views the facts in the light most
favorable to the Plaintiff, the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir.
1995).  However, when reviewing the Committee's substantive decision regarding the denial of
severance benefits, the Court can only consider evidence that was before the Committee at the
time of its decision, and "may not admit new evidence or consider post hoc rationales."  King v.
Hartford Life & Acc. Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (en banc).  In this Background
section, the Court includes some of the relevant evidence and explanations submitted by
Anderson to this Court, but not to the Committee, in footnotes.

Aff. Ex. C (App. A-6 § 2) at USB-A100630; Def.'s Mem. at 2.  At the time of his termination, Anderson worked as a lead financial analyst in the Consumer Banking and Payment Services division of U.S. Bank.  Schaff Aff. Ex. B [Docket No. 55] (Anderson Dep.) at 19.  Anderson's direct supervisor was Mark Fields, and Fields reported to Steve Saloutos.  Id. at 26, 148; Schaff Aff. Ex. C [Docket No. 55] (Fields Dep.) at 10.  Anderson's division was supported by a separate division, the Business Line Reporting & Planning division,[2] headed by Kathy Ashcraft.  Ashcraft Aff. [Docket No. 52] ¶ 1; Anderson Dep. at 29-30.  Lynn Sato, Jason Albeck, and Burcin Iz reported to Deb Crosby, one of Ashcraft's subordinate managers.  Anderson Dep. at 31-32.  Kurt Swiecichowski was also one of Ashcraft's subordinate managers.  Id. at 33.

After the merger, some employees were concerned that their jobs might be eliminated because of duplication of effort.  Holly Aff. [Docket No. 48] Ex. A (Iz. Dep.) at 48.  In 2002, Anderson had conversations with Burcin Iz regarding possible personnel changes as a result of the merger.[3]  Id. at 45, 49-51, 55, 58; Anderson Dep. at 5-6, 43-45.  At her deposition, Iz testified that one particular conversation made her uncomfortable because Anderson mentioned Steve Saloutos may take on a larger role in consumer banking finance.  Iz Dep. at 45.  Iz felt that Anderson's statements suggested that he knew some specific information about changing responsibilities, and Iz believed the information was inappropriate for Anderson to share.  Id. at 49, 58.  Iz reported the conversation to her manager, Deb Crosby.  Id. at 49-50.

---

[2] Prior to the merger, Ashcraft's division was known as the Corporate Analysis & Planning Division.  Anderson Dep. at 30.

[3] At his deposition, Anderson testified that his manager, Mark Fields, asked him to work with Burcin Iz on consolidating their efforts and eliminating instances in which they would perform duplicate responsibilities.  Anderson Dep. at 41-42.

Also in 2002, Anderson had a conversation with Jason Albeck regarding organizational changes. Albeck Aff. [Docket No. 44] ¶ 2; Anderson Dep. at 98-99. According to Albeck, Anderson asked him if he was aware of any potential changes to Kathy Ashcraft's division, specifically whether Deb Crosby was to be demoted. Albeck Aff. ¶ 2. Albeck reported Anderson's comments to Kurt Swiecichowski, who in turn reported the conversation to Ashcraft. Id. ¶ 3; Swiecichowski Aff. [Docket No. 49] ¶ 4. Ashcraft became concerned about the conversations regarding personnel changes because she did in fact have undisclosed plans to demote Deb Crosby. Ashcraft Aff. ¶ 2. Ashcraft believed her demotion plans could only have been discovered by access to an organizational chart file she kept in her individual computer folder in the Corporate Analysis and Planning ("CAP") drive of U.S. Bancorp's document management system.[4] Id.

Ashcraft called Jenny Morgan,[5] a human resources employee, who in turn contacted the Information Security department to examine Ashcraft's computer files. Schaff Aff. Ex. I

[4] The CAP drive includes personal folders for individual employees, labeled with the employee's name. At his deposition, Anderson testified that the CAP drive was a "shared" drive where employees would save documents that they wanted to share with other employees in their division and with others outside of their business line. Anderson Dep. at 52-53. Anderson testified that he accessed the CAP drive routinely and that he accessed the Ashcraft folder as part of his job. Id. at 53. Anderson also testified that it was implied that he could access folders in the CAP drive to get information for projects he was working on. Id. at 57. Others testified that they would not access files in another person's folder without permission. Schaff Aff. Ex. H [Docket No. 55] (Neri Dep.) at 116; Iz Dep. at 58-60; Aschraft Aff. ¶ 3; Swiecichowski Aff. ¶ 5; Caillier Aff. Ex. A at USB-A100118 (Hyde interview).

[5] Jenny Morgan's direct supervisor was DeeAnn Neri. Neri Dep. at 8. At her deposition, Morgan testified that she kept Neri "in the loop" regarding the decision to terminate Anderson. Warner Dep. at 11.

[Docket No. 56] (Warner[6] Dep.) at 32.  Information Security was able to determine the identity of the individuals that last accessed each Ashcraft file.[7]  Id. at 39.  Three individuals other than Ashcraft had last accessed her files: (1) John Anderson had last accessed a salary reconciliation file,[8] (2) Nancy Johnson had last accessed a 2002 performance goals file and personal files (including files concerning Ashcraft's wedding), and (3) Lynn Sato had last accessed a final merit and incentives file.  Id. at 42-44, 57; Caillier Aff. Ex. A at USB-A100423, 428.  Ashcraft's files were not password protected.  Neri Dep. at 94.

On April 19, 2002, Morgan left a voicemail message for Anderson, stating that she "needed to talk to him about the files that had been inappropriately accessed in the Ashcraft folder."[9]  Caillier Aff. Ex. A at USB-A100481.  According to Morgan's typewritten notes,[10]

---

[6] Before her deposition, Jenny Morgan married and became Jenny Warner.  Def.'s Mem. at 4 n.4.  As a result, her deposition is referred to as the Warner deposition.  Because she was Jenny Morgan during the events relevant to this case, she is referred to as Jenny Morgan in this Order.

[7] Information security was able to determine the identity of only the most recent individual to access a particular file, but could not determine which, if any, other individuals may have accessed a particular file prior to the last access.  Warner Dep. at 54.

[8] The complete path name for the file accessed by Anderson is: \\INCFIN01\Vol2:\Shared\CAP\KathyAshcraft\2002Plan\BoardPlan\SalaryReconConsolidatedSalaryRecon.xls.  Warner Dep. Ex. 1.

[9] Anderson disputes the content of the voicemail message.  Anderson avers that Morgan did not mention anything about inappropriately accessed files.  Anderson Dep. at 124.

[10] Morgan initially took handwritten notes regarding her conversation with Anderson.  Warner Dep. at 76.  Her handwritten notes were later typed by someone else.  Id. at 83.  Anderson avers that the handwritten questions and the typewritten questions are different.  See id. at 84-85.  At his deposition, Anderson testified that Morgan never told him the purpose of her call, and did not write down everything they discussed in the phone call.  Anderson Dep. at 86, 92, 114.  He also testified that what she wrote was "a fairly decent representation of what was said, with the exception that she does not document everything that was said."  Id. at 125.  Morgan testified the notes reflected the "gist" of the conversation.  Warner Dep. at 81.

Anderson returned Morgan's call and provided the following answers to the following questions:

> Q: Does the information that you accessed have anything to do with your normal course of business or anything that you would have needed to access in a project you were working on?
> A: No, there are other files that are used for what I do, but none of these. (the files in the Ashcraft folder).
> Q: Why did you access this file?
> A: Just tried to see if I could access it.  I did and then closed it right away.
> Q: Did you copy/forward/print this information or talk to anyone about what you accessed?
> A: No, I didn't talk to anyone about it.[11]

Id. at USB-A100481.

On April 30, 2002, John T. Anderson's employment with U.S. Bancorp was terminated.

Id. at USB-A100488.  Ashcraft and Morgan made the decision to fire Anderson for violating

company policies by accessing the files of a senior employee.[12]  Id. at USB-A100481; Warner

Dep. at 11.  Anderson received a Notice of Termination, which informed him that he would not

receive severance pay because he was being terminated for cause.  Caillier Aff. Ex. A at USB-

---

[11] At his deposition, Anderson explained these statements by stating that at the time Morgan was interviewing him, he did not remember accessing the Ashcraft folder to get salary plan information.  Anderson Dep. at 86-87.  As a result, he made a mistake in telling her that the file was not necessary to perform his job duties.  Id. at 114.  Anderson also testified that he would look on the CAP drive for information related to his job, but would not always know if a particular file was relevant based solely on the name of the file.  Id. at 90.  As a result, he would open the file to see if it contained relevant information; if it did not, he would close it.  Id.  In addition, Morgan also interviewed Johnson and Sato regarding their access of Ashcraft files.  Anderson points out that Jenny Morgan's notes of her interview with Nancy Johnson are almost identical to her notes of her interview with Anderson.  Neri Dep. at 84.

[12] U.S. Bancorp's Computer and Information Security Policy provides: "all of your computer access is on a need-to-know basis and is limited to the information required to perform your job."  Freeman Aff. [Docket No. 47] Ex. A at USB-A100526.  U.S. Bancorp's confidentiality policy states: "The use of any information stemming from your employment shall be restricted to that which is absolutely necessary for the legitimate and proper business purposes of U.S. Bancorp."  Id. at USB-A100512.

A100452.  The Notice of Termination further states as the basis for termination: "You have engaged in unethical conduct by violating U.S. Bancorp Code of Conduct."  Id.  At the termination meeting, Anderson allegedly stated that if he had known he was going to be terminated, he would have answered Morgan's questions differently.  Warner Dep. at 120-21; Neri Dep. at 97.

On June 21, 2002, Anderson submitted a claim for severance benefits.[13]  Caillier Aff. Ex. A at USB-A100475.  In his claim for severance, Anderson alleged that he was wrongfully terminated for engaging in unethical conduct that violated the U.S. Bancorp Code of Conduct based on an inadequate investigation by Morgan.  Id. at USB-A100476.  Anderson stated that he did not access any file containing confidential and proprietary information, his actions did not constitute "cause" as it is defined by the Plan, and that he had conversations with employees regarding only well known integration issues.  Id. at USB-A100476-77.  Anderson admitted to accessing a salary reconciliation file in the Ashcraft folder, but stated that the file was indirectly related to one of his job responsibilities.[14]  Id. at USB-A100477.

On August 13, 2002, the Committee[15] denied Anderson's claim for severance.  Id. at

---

[13] Prior to submitting his claim, Anderson asked for and was provided documents concerning his severance claim.  Caillier Aff. Ex. A at USB-A100469.  Anderson was also told to "[f]eel free to call Jenny Morgan if you have any questions."  Id.

[14] At his deposition, Anderson testified that his manager, Mark Fields, asked him to determine whether their planned salary number for the Consumer Banking and Payment Services group matched the actual salary number.  Anderson Dep. at 48-50, 70-71.  Anderson testified that it was up to him to find the information somewhere in the CAP drive, and to get the job done any way he could.  Id. at 65, 73.  The salary reconciliation file that Anderson accessed was in a 2002 Plan sub-folder in the Ashcraft folder.  See id. at 84.

[15] The Committee consisted of DeeAnn Neri, a senior vice president in the human resources department; Edward Caillier, a human resources employee; and Diane Thoromsgaard, a senior manager in the trust division.  Neri Dep. at 6-7.  Thoromsgaard was not present at the

USB-A100438.  The Committee stated that Anderson's termination was for cause within the

meaning of the Plan because his access to the organizational chart with employee salaries in the

Ashcraft folder was without authorization and without a business purpose.  Id. at USB-A100435.

The Committee also concluded that Anderson shared the information he accessed with other U.S.

Bancorp employees, and then lied to Morgan about doing so.  Id. at USB-A100436.  The

Committee stated that Anderson's conduct violated several of U.S. Bancorp's policies in its

Code of Ethics and Conduct on the Job and the Computer and Information Security policy.  Id. at

USB-A100435.

On October 11, 2002, Anderson appealed the Committee's determination.  Id. at USB-

A100366.  In his appeal, Anderson stated that the Committee had inaccurately determined

several facts.  Anderson stated that he accessed the salary reconciliation file, not the

organizational chart file, and thus did not access any file containing confidential employee

information.  Id. at USB-A100367.  Anderson further stated that he had a business purpose for

accessing the reconciliation file, never shared confidential information with other employees,

had access rights to the file because it was on a shared drive, and his actions do not constitute

cause.  Id. at USB-A100368.  Anderson supplemented his appeal by way of an additional letter

on February 4, 2003, after U.S. Bancorp provided Anderson the opportunity to interview

employees.  Id. at USB-A100357.  Anderson stated that while he discussed possible lay-offs

generally with his co-workers, as did most U.S. Bancorp employees, he did not share any

specific, sensitive employee information.  Rather, Swiecichowski inappropriately concluded that

Anderson had shared information after rumors began that someone had accessed sensitive

meeting when the Committee denied Anderson's initial claim.  Id. at 87.

Ashcraft files.  Id. at USB-A100358.

On March 21, 2003, the Committee denied Anderson's appeal.  Id. at USB-A100312.
The Committee stated that there was insufficient evidence to conclude that Anderson accessed
the organizational chart or shared confidential information, as it had previously concluded.  Id. at
USB-A100313.  However, the Committee did not accept Anderson's proffered business purpose
for accessing the salary reconciliation file in the Ashcraft folder, in light of Anderson's failure to
assert a business reason at the time of the Morgan interview or his termination, and his
statements that he "just tried to see if I could access it . . . I did it and then closed it right away."
Id.  The Committee also focused on Anderson's statement to Morgan that he would have
answered differently if he had known that he would be terminated for accessing the document.
Id.  Anderson then commenced this lawsuit.

Nancy Johnson, also terminated for accessing Ashcraft files without permission and
without a business purpose, sued the Plan and the Committee under ERISA for denying her
severance benefits.  Judge Donovan W. Frank granted summary judgment for Johnson.  Johnson
v. U.S. Bancorp Broad-Based Change in Control Severance Pay Program, No. Civ. 02-4924,
2003 WL 21939758, at *5 (D. Minn. Aug. 11, 2003).  On appeal, the Eighth Circuit reversed the
grant of summary judgment for Johnson and awarded summary judgment to the Committee.
Johnson v. U.S. Bancorp Broad-Based Change in Control Severance Pay Program, 424 F.3d 734,
740 (8th Cir. 2005).  The Eighth Circuit held that the Committee reasonably interpreted "cause"
to include knowing and willful violations of U.S. Bancorp's computer security policy and that
the Committee reasonably exercised its discretion in applying uncertain terms of the Plan.  Id. at
739.  The court also held that substantial evidence supported the Committee's determination that

Johnson's actions in accessing Ashcraft's personnel folder constituted a knowing and willful violation of the computer security policy.  Id.

### III. DISCUSSION

**A.      Standard of Review for Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      Denial of Benefits Determination**

ERISA provides a plan participant with the right "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  The Supreme Court has held that when a plan gives an administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, an administrator's decision is to be reviewed for an abuse of discretion.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Woo v.

10

Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998).  However, the Eighth Circuit applies a less deferential, sliding scale standard of review when the plaintiff has presented "material, probative evidence demonstrating that: (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty."  Woo, 144 F.3d at 1160.  Here, there is no dispute that U.S. Bancorp had discretionary authority under the terms of the Plan.  See Johnson, 424 F.3d at 738.  Therefore, the abuse of discretion standard applies unless Anderson can show that the less deferential standard should be applied.

**1.      Determining the Standard**

Anderson argues that a serious conflict of interest existed because the Committee was predisposed to deny Anderson's claim for benefits.  Morgan kept Neri "in the loop" while making the decision to terminate Anderson, and as a result, it is argued that Committee member Neri was pressured to confirm Anderson's termination for cause to avoid admitting that the human resources department made a mistake in its investigation.  Caillier, another human resources department employee, had a similar direct conflict of interest.  Anderson also argues that serious procedural irregularities existed because the Committee never gave Anderson "a description [in writing] of any additional material or information necessary for [Anderson] to perfect the claim and an explanation of why such material or information is necessary," as is required by the Plan.  Caillier Aff. Ex. C (Plan § 8.1) at USB-A100640.  Anderson avers that if the Committee felt that he had not fully explained his proffered business purpose for accessing the salary reconciliation file, the Committee should have asked him for further information.

Even assuming *arguendo* that a palpable conflict of interest or a serious procedural

11

irregularity existed, Anderson has failed to establish that such palpable conflict of interest or

serious procedural irregularity caused a serious breach of the plan administrator's fiduciary duty.

The Eighth Circuit has said that "Woo's second prong presents a considerable hurdle for

plaintiffs.  The evidence must give rise to serious doubts as to whether the result reached was the

product of an arbitrary decision or the plan administrator's whim."  Schatz v. Mutual of Omaha

Ins. Co., 220 F.3d 944, 948 (8th Cir. 2000).  It is only when irregularities "are so egregious that

the court has a total lack of faith in the integrity of the decision making process that a court may

infer the plan administrator did not exercise proper judgment."  Tillery v. Hoffman Enclosures,

Inc., 280 F.3d 1192, 1199 (8th Cir. 2002).

In this case, there is no evidence that Neri's dual role as a Committee member and

Morgan's supervisor caused the Committee to determine that Anderson's termination was for

"cause."  At her deposition, Neri testified that the Committee considered all information before it

in making its determinations, including submissions by Anderson's counsel.  Neri Dep. at 29, 32,

35, 46, 53, 86, 97-99.  In addition, the Committee has shown ability to reverse course, as

occurred when the Committee changed its conclusion on appeal to find there was insufficient

evidence Anderson had viewed the organizational file or shared confidential information with

other employees, as the Committee had originally concluded.  Caillier Aff. Ex. A at USB-

A100313.  The Committee's failure to inform Anderson that his proffered business purpose was

not sufficiently specific is not significant.  Anderson was represented by counsel throughout the

entire claim process, and had an opportunity to present information to the Committee.  Neri Dep.

at 48-49, 54-55.  Further, the Committee doubted Anderson's credibility and chose not to believe

his proffered business purpose after he admitted to Morgan during her initial interview that he

had no business purpose for accessing the Ashcraft files.  As a result, the abuse of discretion

standard applies.

2.        **Abuse of Discretion**

Defendants argue that Anderson's claim is controlled by the result of <u>Johnson</u>, in which

the Eighth Circuit determined under similar circumstances in the same work environment that

the Committee's interpretation of "cause" was reasonable.  Defendants further argue that the

Committee reasonably failed to credit Anderson's late-asserted business purpose based on the

entirety of the evidence it considered.  Even if the Committee had believed Anderson's business

purpose explanation, Defendants aver that the Committee could reasonably conclude that

accessing files in personal folders of other employees without specific permission violates

company policy.  In addition, Defendants assert that Anderson may not supplement the

Administrative Record with new evidence to explain his actions that the Committee did not have

before it.

Anderson argues that the Committee's interpretation of "cause" was not reasonable

because his actions are not similar to the examples of gross misconduct set forth in the plan, such

as theft, assault, and arson.  Further, the Committee's determination unreasonably relied on

misrepresented or false evidence provided by Morgan while failing to credit Anderson's

assertion of a business purpose.  Anderson further avers that his case is distinguishable from

<u>Johnson</u> because Johnson accessed files that contained personnel information and personal

wedding details, whereas he accessed a business file needed for a work assignment.

The Eighth Circuit has enumerated several factors for district courts to consider when

determining whether plan administrators have abused their discretion in interpreting uncertain

terms in a plan:

> [W]hether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language of the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan.

King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (*en banc*); see also

Finley v. Special Agents Mut. Benefit Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992).  However,

"the dispositive principle remains that where plan fiduciaries have offered a reasonable

interpretation of disputed provisions, courts may not replace it with an interpretation of their

own—and therefore cannot disturb as an abuse of discretion the challenged benefits

determination."  Id.  A Plan administrator's decision with respect to an individual's claim is

reasonable under abuse of discretion review if supported by substantial evidence, that is, "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.

The Eighth Circuit has stated that a decision is reasonable "if a reasonable person *could* have

reached a similar decision, given the evidence before him, not that a reasonable person *would*

have reached that decision.  If the decision is supported by a reasonable explanation, it should

not be disturbed, even though a different reasonable interpretation could have been made."  Cash

v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997) (emphasis in original).  A

decision is reasonable if it is "supported by substantial evidence which is more than a scintilla,

but less than a preponderance."  Ferrari v. Teachers Ins. & Annuity Ass'n, 278 F.3d 801, 807

(8th Cir. 2002).  Finally, under the abuse of discretion standard, a district court "must focus on

the evidence available to the plan administrators at the time of their decision and may not admit

new evidence or consider *post hoc* rationales."  King, 414 F.3d at 999.

14

In <u>Johnson</u>, the case of Plaintiff's fellow bank employee, the Eighth Circuit concluded:

Given the specific definition of "gross and willful misconduct" in the Plan, the Committee reasonably interpreted "cause" to include violations of U.S. Bancorp's policies forbidding an employee to "access data that you are not authorized to access," and requiring an employee to "ensure that all of your computer access is on a need-to-know basis and is limited to the information required to perform you job," at least where such violations are knowing and willful.

424 F.3d at 739.  The court also determined that the Committee's decision regarding denial of benefits was supported by substantial evidence because Johnson admitted having no business reason for accessing Ashcraft files, and her actions appeared knowing and willful.  <u>Id.</u> at 739-40. The court further stated that the ability to access a file is not the same as having authorization to access a file, and Johnson did not have authorization to access personnel and personal Ashcraft files.  <u>Id.</u> at 740.  Finally, the court determined, after acknowledging Johnson's status as a long-term employee with many favorable performance reviews, that whether Johnson's conduct warranted termination was debatable as a matter of business judgment, but nonetheless not a judgment that the court is empowered to make.  <u>Id.</u>  Rather, the court can only determine "whether a reasonable person could have interpreted and applied the ERISA plan in the way that the administrator did, and here the answer is yes."  <u>Id.</u>

As held by the Eighth Circuit in <u>Johnson</u>, the Committee's interpretation of the term "cause" in the Plan is reasonable.  Although accessing a computer file of a high-level executive without express permission may not be comparable to assault or arson, the Plan also includes "acts or omissions which violate the Employer's rules or policies (such as breaches of confidentiality)" as gross or willful misconduct.  Caillier Aff. Ex. C (App. A-6 § 1.7) at USB-A100620.  The Committee concluded that Anderson's access of an Ashcraft file violated the Computer and Information Security policy, and that such a violation constituted gross and willful

15

misconduct.  Caillier Aff. Ex. A at USB-A100313.  This Court is bound by the Eighth Circuit's decision in <u>Johnson</u> that the Committee's interpretation of "cause" was reasonable, and as a result, the Committee has not abused its discretion in interpreting the terms "cause" and "gross and willful misconduct" in the Plan.

In addition, the Court can not consider evidence that was not presented to the Committee. <u>King</u>, 414 F.3d at 999.  While Anderson did make some claim of a business purpose for accessing the file before the Committee, he was not specific and spoke in terms of an example of a business purpose.  The Committee did not abuse its discretion in rejecting this general explanation in light of Anderson's earlier denials of a specific business purpose.  His recent detailed explanation of a business purpose can not now be considered by the Court.  In addition, while Anderson now complains that Morgan did not fully transcribe his answers to her questions, never told him why she was questioning him about Ashcraft files or what Ashcraft files she was referring to, and provided the Committee with a typed rendition of her questions and Anderson's answers different in kind from her handwritten notes of the interview, Anderson never raised these issues before the Committee.  Anderson also argues that the Committee should have asked him to elaborate on his business purpose for accessing the salary reconciliation file. This claim is undercut by Anderson's representation by counsel throughout the claims process and his ample opportunity to provide the Committee with information.  <u>See</u> Caillier Aff. Ex. A at USB-A100361, 432, 469.  The revised explanation for the file access can not now be used to examine the reasonableness of the Committee's decision.

A more difficult question is whether the Committee's decision regarding benefits was reasonable in light of the evidence before it.  Anderson's case is factually different from <u>Johnson</u>

16

because the Committee had undisputable evidence that Johnson accessed personnel and personal files for which she could not possibly have had a business purpose.  Anderson, however, presents a situation in which the Committee only had evidence of him accessing the salary reconciliation file—a file that Anderson arguably could have used for a project he was working on.  Anderson alleges Morgan's investigation was inadequate and incomplete, and led to the Committee making an erroneous determination regarding his termination.  Before the Committee, Anderson repeatedly argued that the file he accessed did not contain any employee information and that he did not share confidential organization information with other employees.  Any conclusion that Anderson accessed sensitive employee information and shared it with others was "because of an unfortunate chain of events that led Bank management to draw the wrong conclusions without any evidence of actual wrongdoing." Id. at USB-A100360.  With regard to a business purpose for accessing the salary reconciliation file, Anderson told the Committee that the file was "indirectly related to Mr. Anderson's responsibilities for 2002 planning for one of the major business lines listed, Consumer Banking.  You can verify this by discussing this with his manager at the time, Mark Fields." Id. at USB-A100477.  Additionally, Anderson stated that the file he accessed:

> [W]as needed for Mr. Anderson to perform his job duties for the 2002 planning project. When Mr. Anderson was answering questions from Jennifer Morgan, on April 19, 2002, he admitted accessing the above file in the Kathy Ashcraft directory but made a mistake stating this file was not needed for him to perform his job duties.  For example, Mr. Anderson was doing a budget for the Consumer Banking Division and total division salary information is obviously a major component of this budget.

Id. at USB-A100367.

However, the Committee also had before it Anderson's somewhat contradictory answers to Morgan's questions at the time of his termination.  Then Anderson admitted to having no

17

business purpose for the file that he accessed, and that he "just tried to see if I could access it.  I did it, and then closed it right away."  Id. at USB-A100313.  In addition, Anderson told Morgan that he would have answered differently if he had known that he would be terminated for accessing the document.  Id.  Based on all of the information before it, the Committee concluded that Anderson's belated assertions of a business purpose were not credible, and that because Anderson had violated the Computer and Information Security policy, his termination was for cause.  Under these circumstances, the Committee's determination was reasonable and therefore not an abuse of discretion.

## C.  Breach of Fiduciary Duty Claim

In his Complaint, Anderson includes a claim for "breach of Defendants' fiduciary duty in violation of section 510 of ERISA, 29 U.S.C. § 1104."[16]  Complaint ¶ 41.  Anderson avers that Defendants provided false reasons for Anderson's termination to avoid paying severance benefits to Anderson.  Id. ¶ 38.  Defendants ask for summary judgment on this claim, arguing that it is duplicative of Anderson's claim for benefits under 29 U.S.C. § 1132(a)(1)(B), and that Anderson can not demonstrate any facts to support a claim that he was terminated to avoid the payment of severance.  See Wald v. Southwestern Bell Corp. Customcare Medical Plan, 83 F.3d 1002, 1006 (8th Cir. 1996).  Anderson did not directly respond to Defendants' arguments on this issue.  The Court agrees that from the face of his Complaint, Anderson's fiduciary duty claim seeks no different relief than his claim for determination of benefits.  Also, Anderson has set forth no facts to establish that Defendants terminated him for cause to avoid having to pay him

---

[16] The basis for Anderson's claim is confusing, as section 510 of ERISA corresponds with 29 U.S.C. § 1140, not 29 U.S.C. § 1104.  Section 1104 corresponds with section 404 of ERISA and defines fiduciary duties.

severance.  In addition, the Eighth Circuit has stated: "29 U.S.C. § 1104 cannot independently

support a claim of fiduciary duty.  Section 1132(a) provides the exclusive causes of action for

claims by ERISA plan participants and beneficiaries seeking to enforce rights under an ERISA

plan." Sahulka v. Lucent Techs., Inc., 206 F.3d 763, 768 n.9 (8th Cir. 2000) (internal citation

omitted).  Anderson's breach of fiduciary duty claim is dismissed.

**D.      Defamation**

Anderson argues that the statement that he was terminated because he "engaged in

unethical conduct by violating U.S. Bancorp Code of Conduct" is defamatory.  Anderson argues

that the statement is false, and was published when documented to Anderson's personnel file and

reported to Anderson's supervisor.  Anderson also argues that the statement is defamatory per se,

thus obviating the need to prove damages, and is not protected by a qualified privilege.

A statement is defamatory if: (1) it is communicated to someone other than the plaintiff,

(2) it is false, and (3) it tends to harm the plaintiff's reputation and lower him in the estimation of

the community.  Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980).

"Slanders affecting the plaintiff in his business, trade, profession, office, or calling are slanders

per se and thus actionable without any proof of actual damages.  Truth, however, is a complete

defense, and true statements, however disparaging, are not actionable." Id.  Qualified privilege

is also a defense to a defamation claim unless the privilege is abused. Id. at 256-57.  A statement

is qualifiedly privileged if "made upon a proper occasion, from a proper motive, and must be

based upon reasonable or probable cause." Id.

As an initial matter, there is evidence that the statement is true, as Anderson accessed the

Ashcraft file without Ashcraft's permission, and U.S. Bancorp determined that Anderson's

19

actions violated its policies.  However, regardless of the truth of the statement, U.S. Bancorp's actions are protected by a qualified privilege.  U.S. Bancorp had a proper occasion and motive for the statement because it was explaining to Anderson the reason for his termination, thereby protecting itself and future employers.[17]  Brooks v. Doherty, Rumble & Butler, 481 N.W.2d 120, 125 (Minn. Ct. App. 1992) (stating that courts have found proper purposes to include an employer's ability to evaluate an employee honestly and communicate that review to prospective employers, and proper occasions to include communicating to an employee the reason for discharge).  U.S. Bancorp also had reasonable grounds to believe the statement was true based on the investigation by Information Security that revealed Anderson accessed the salary reconciliation file in the Ashcraft folder.  When confronted by Morgan, Anderson admitted to accessing the Ashcraft file without a proper business purpose and "just to see if I could access it."  While the defense of qualified privilege can be lost if a plaintiff can establish actual malice, Anderson has failed to set forth any facts establishing malice and as a result, summary judgment is appropriate.  Kuelbs v. Williams, 609 N.W.2d 10, 16 (Minn. Ct. App. 2000) ("Although malice is generally a question of fact, summary judgment is appropriate if the plaintiff fails to raise a genuine issue of material fact regarding malice.").

---

[17] Neither Anderson nor U.S. Bancorp communicated the reason for Anderson's termination to Anderson's subsequent employer, GMAC-RFC.  Anderson Dep. at 9, 141-43.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 41] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 28, 2006.